Curia, per

O’Neall, J.
The only question necessary to be considered in this case, is, whether the complainants’ claim for an account of the hire of their slaves, is barred by the statute of limitations.
A trust which is not within the statute of limitations, must, in the language of Chancellor Kent, “be a techni-nal and continuing trust, which is not at all cognizable at law, but falls within the proper, peculiar and exclusive jurisdiction” of the Court of' Equity. Kane vs. Bloodgood, 7 J. C. R. 111. So long as this trust continues, there cannot be any adverse right or possession ; for the trustee holds both the legal estate and the possession, not for himself, but for his cestui que trust." While, therefore, the trust continues, the statute of limitations cannob affect it; but if the trustee does an act which he intends, and which is understood by his cestui que trust, to be a discharge of his trust, then the statute will, from that time, commence to run ; and this was so decided by this court at our last session in Charleston, in the case of Moore vs. Porcher. According to Chancellor Kent’s definition of such a trust as will not be affected by the statute of limitations, the case put will be found to want one very essential character. It is no longer a continuing trust. Indeed, it is no longer a trust in any sense of the word, for a trust is to hold for the use of another. But here the trustee has ceased so to hold — he indeed- holds for himself. In this respect, the case is very .analogous to a very common and familiar one at law, that of landlord and tenant. So long as this relationship exists, the tenant cannot acquire an adverse title by possession. But so soon as he is divested of his character as tenant, by the consent of his land *446 lord, as by parchase from him, or by going out of possession, and again acquiring it — or by actual notice to his landlord that he has ceased to hold as tenant, and holds for himself; he may acquire a title by possession, for he then holds for himself, and in his own right, and not for, and in the right of, another; and this is what I understand by adverse possession. Simons vs. Parsons, decided January term, 1830, at this place.
It is supposed, however, that the rule which I have stated cannot apply to this case; for it is alleged that the defendant’s testator, as trustee for Mrs. Starke, could not discharge his trust otherwise than by coming to a regular account, and paying the balance found in his hands.. This position is based upon the notion, that the hire in arrear was the wife’s equitable chose in action, which the court of equity would order to be settled on her, and that, therefore, no act of the husband, short of an actual receipt of the fund, could actually or constructively discharge the trustee from a future account. There is no doubt of the rule, that where the husband or his assignee have to seek the aid of the court of equity, to render the wife’s chose in action available, that it will generally decree a settlement; and that there is as little doubt where either receive it and render it available, that the court of equity cannot interfere. Upon marriage, the husband has the right to receive the personal property of the wife; and his receipt for the amount of his wife’s choses in action, even although she be a minor, is good and valid, and will discharge her guardian from any further account. Edwards vs. Higgins, 2 M’Cord’s C. R. 16. If he thinks proper to receive the property, and believing that he has, in some way, received an equivalent for its hire, he may decline an account, and discharge the trustee. For it will not be denied, that the complainant Starke, might (if he had thought -proper so to do) have claimed from his uncle, the testator, an account of the’,hire of his wife’s slaves, and on receiving payment, he could have returned the money to him; and if this had been done, it could not be pretended that either he or his wife could ever have demanded any further account. The course which the complainants allege was pursued, was exactly equivalent *447 to this. For he received the slaves of his wife and such of the property as the testator thought proper to give him, and believing either that he was fully indemnified for the hire, or that it would be hard or unjust to claim an account, he promised not to do so. This was a gift by the husband to the trustee, of his liability to account. Standing by itself, it could not perhaps be sustained as a promise not to demand an account, unless plenary proof had been furnished of a consideration to sustain it. But it is in evidence, that at that time the trustee did an act, intended and understood to be by the cestuique trust entitled to receive, a discharge of the trust. It is in this point of view alone, that I attach any importance to the paper executed by Wyatt W. Starke.
The statute of limitations is founded upon the presumption, that after the time allowed by it for an action to be brought, that the evidences of settlement and payment have been lost, and this lapse of time stands in the place ot proof, and operates as a positive bar, even against our belief of non-payment. If it was necessary, therefore, in the case before us, it would be our duty, in speaking of a matter to which the bar of the statute applies, to presume in favor of the defendant, that an actual account, and payment in money or property, had been made, at the time the trust was terminated.
In January, 1819,- when the testator delivered over the slaves to his cestuique trust, his trust terminated, and the statute then commenced its operation. If it was pretended that a fraud had been committed by the trustee, or that his cestuique trusts were ignorant of their rights, the statute would not commence to run until a discovery of the fraud, or until they were informed of their rights. But there is no pretence of this kind in the case; and indeed the paper executed by Wyatt W. Starke shows that he was well aware of his wife’s rights, and that he chose to end the relation of trustee and cestuique trust without asserting them. In four years after January, 1819, the right of the complainant, Starke, to demand any further account, was barred ; and I am very much inclined to think, that in a case brought by himself and wife, the coverture of his wife *448 would not be any answer to the plea of the statute of limitations. The saving in favor of femes covert, in the statute, is for the protection of the wife, and not the husband; and in that view it is, that she is authorized to constitute an attorney to sue either in her own name, or in the name of her husband himself. But it is not necessary so to decide in this case. For unless the wife was entitled to five years, after attaining to full age, the bar is complete against her as well as the husband. By the Act of 1712, 2 Brev. Dig. Tit. 110, Sec. 14, p. 23, it is provided, that if any person or persons, “at the time of any such cause of 'action given or accrued, shall be beyond the seas, or feme covert, or imprisoned, shall be at liberty to bring their action at any time within four years after the ratification of this Act, or at any time within five years after such cause of action given or accrued, and at no time after.” To entitle the complainants to the benefit of this saving, it is necessary to shew that the cause of action accrued during coverture. It is, however, unquestionable, that the right to demand an account of the hire of the slaves, accrued to Miss Blakeley at the end of every year after the death of her father. The cause of action therefore existed before coverture, and she cannot claim the benefit.of this saving. In Tredville & wife vs. Collins, 1st Con. Rep. (Tredway’s ed.) 202, the cause of action accrued to the feme plaintiff while sole, and during infancy, and it was held that she was bound in four years after attaining to full age; and that she was not entitled to sue within five years from her coverture, notwithstanding it appeared that she had been married during infancy.
It is true that in Stowell vs. Zouch, Plowden, 375, it is said “ that if one had three or four of the defects and impediments, as if a woman who has present right, or when the positive right falls in is covert, within age, not of whole mind, and in prison, and one or two or three of these defects are removed, as if the husband dies, and she is of full age and let out of prison, the five years appointed to her by the statute, shall not commence until the last defect or impediment is removed ; and when she is void of all the impediments or defects, then the five years shall *449 commence.” On looking back into the report of that case, at page 362, the clause of the statute, to which this argument of the Judges alludes, will be found to provide, “that all women covert, not parties to the fine, and every person, within age, in prison or out of the realm, and not of whole mind at the time of the fine levied and ingrossed, and by the Act before excepted, having any right or title or cause of action, to the lands, shall take their actions on lawful entry according to their right and title, within five years, after they come and be of full age oí twenty one years, out of prison, discovert,” &c. From which it appears, that the statute there referred to, and upon which the argument is founded, contemplates the giving of five years, after the removing of all disabilities which may exist at the accrual of the cause of action. The conclusion of the Judges in this argument is nothing more than that the party may rely upon the disability last removed, and claim the five years from that time. All the disabilities must exist at the moment the cause of action accrues. If only one existed, and that is removed, the statute would commence to run, and a subsequent disability accruing, would not prevent it from running out, as appears from the same authority. So that even according to this case, coverture, after the cause of action accrued, could not be joined to infancy, to extend the term allowed by the statute. But our Acts of limitations are not identical in their provisions with the statute referred to in Plowden. The Act of 1788, 2 Brev. Dig. Tit. 110, sec. 23, p. 25, allows to infants four years, after attaining full age, to prosecute any personal action. The Act of 1712 does not except femes covert until after discoverture, but merely gives them the right to sue at any time within five years after the cause of action accrued. The Acts of limitations do not, therefore, regard coverture and infancy as equal disabilities. Indeed, coverture is not a disability, for the Act of 1712 does not treat it as such, in permitting the rights of a feme covert to be barred while it exists ; and by another provision, the right and power to sue, is given to her. It may admit of a grave question, whether the disability of infancy is not merged in the coverture, and whether an infant feme covert could have any longer *450 term than five years after the accrual of her cause of action. In all events, the party could only have the right to claim the protection of one or the other, and not rely upon both as cumulative disabilities.
In the case before us, the complainants must rely on the infancy of Mrs. Starke. She was of full age in July or October, 1823. Take the last period as the true time, and she would be barred in October, 1827, three months before the testator’s death, and nearly a year and eight months before the filing of this bill.
It is therefore ordered and decreed, that the Chancellor’s decree be affirmed.